**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| MATIMA MUHAMMAD,<br><br>Plaintiff,<br><br>v.<br><br>ESS SOUTHEAST LLC and CROWN POINT COMMUNITY SCHOOL CORPORATION,<br><br>Defendants. | CAUSE NO.: 2:26-CV-135-TLS-APR |

**OPINION AND ORDER**

This matter is before the Court on a Report and Recommendation [ECF No. 41], filed by Magistrate Judge Andrew P. Rodovich on August 17, 2026, as to Defendant ESS Southeast LLC's Motion to Compel Arbitration [ECF No. 19], filed on May 29, 2026, which Defendant Crown Point Community School Corporation joined on July 16, 2026 [ECF Nos. 30, 40]. For the reasons set forth below, the Court overrules the Plaintiff's Objections, adopts the Report and Recommendation, orders the parties proceed to arbitration, and stays this case.

**PROCEDURAL BACKROUND**

The Plaintiff Matima Muhammad, proceeding pro se, filed an Employment Discrimination Complaint in this Court on March 26, 2026, against Defendants ESS Southeast LLC (ESS) and Crown Point Community School Corporation (CPCSC). ECF No. 1. Defendant ESS filed an Answer on May 22, 2026. ECF No. 16. On May 29, 2026, Defendant ESS filed the instant Motion to Compel Arbitration based on an arbitration agreement between the Plaintiff and Defendant ESS. ECF No. 19. Defendant CPCSC filed an Answer on June 11, 2026, ECF No. 25, following an extension of time.

On June 4, 2026, the Plaintiff filed her Opposition to the Motion to Compel Arbitration. ECF No. 23. On July 9, 2026, following two extensions of time, Defendant ESS filed a Reply in support, which also relied on a Paychex Dispute Resolution Agreement between the Plaintiff and Paychex (Defendant ESS's professional employer organization). ECF No. 28.[1] Defendant ESS also filed an opposition to the Plaintiff's request for an evidentiary hearing. ECF No. 29.

On July 16, 2026, Defendant CPCSC filed a Motion to Join ESS's Motion to Compel Arbitration based on the Paychex Dispute Resolution Agreement. ECF No. 30. The Plaintiff opposed the motion, ECF No. 35, and Defendant CPCSC filed a reply in support, ECF No. 39. Judge Rodovich granted the Motion to Join on August 17, 2026. ECF No. 40. The Plaintiff did not object. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").

On August 17, 2026, Judge Rodovich issued his Report and Recommendation, recommending that the Motion to Compel Arbitration be granted as to both Defendants and that this litigation be stayed. ECF No. 41. The Plaintiff timely objected on August 28, 2026. ECF No. 44. Defendant ESS filed a response to the objection on September 11, 2026. ECF No. 45. The Plaintiff did not file a reply, and the time to do so has passed. On September 18, 2026, Defendant CPCSC filed a Motion to Join Defendant ESS's response to the Plaintiff's objection. ECF No. 46. The Plaintiff did not file a response, and the time to do so has passed.

[1] The Plaintiff filed a Motion to Strike Defendant ESS's reply brief, arguing that it raises new arguments and evidence, ECF No. 31; Defendant ESS filed a response, ECF Nos. 36, 37; and Judge Rodovich denied the Motion, ECF No. 40. The Plaintiff also filed a Motion for Leave to File Sur-Reply, ECF No. 34; Defendant ESS filed a response, ECF No. 38; and Judge Rodovich denied the motion, ECF No. 42. The Plaintiff did not object to either ruling. *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.").

## FACTUAL BACKGROUND

### A. The Plaintiff's Employment, Termination, and EEOC Charges

Defendant ESS is a private staffing company that provides temporary substitute staff, primarily substitute teachers, to school districts throughout the country. ECF No. 19-2, ¶ 4. Defendant ESS hired the Plaintiff as a substitute teacher in February 2025. Compl. 2, ECF No. 1. The Plaintiff worked as a substitute teacher for Defendant CPCSC from March 10, 2025, until her termination on May 29, 2025. *Id.* 2, ¶¶ 3, 4; 20, ¶ 108. In July 2025, the Plaintiff filed EEOC Charges of Discrimination against both Defendants, and the EEOC issued Notices of Right to Sue in January and February 2026. *Id.* 1, ¶¶ 5, 6; ECF No. 1-2.

### B. This Federal Litigation

The Plaintiff filed her Complaint in this case on March 26, 2026. ECF No. 1. On April 27, 2026, counsel for Defendant ESS contacted the Plaintiff by email to ask whether she would stipulate to move her claims to arbitration per the ESS Arbitration Agreement. ECF No. 19-4, ¶ 5; *id.* Ex. B. On May 4, 2026, counsel called the Plaintiff and left a voicemail with the same request. *Id.* ¶ 6. Counsel represents that the Plaintiff did not respond. *Id.* ¶ 7.

### C. The Plaintiff's Onboarding Process with Defendant ESS and Paychex

In early February 2025, Defendant ESS required an applicant for a substitute teaching position to set up a WillSub+ account to apply for and, if offered employment, complete pre-hire forms for submission to ESS. ECF No. 19-2, ¶ 7. After creating and registering the WillSub+ account, the applicant could then log in to review and acknowledge position requirements to create an application for the position of interest. *Id.* ¶¶ 8–10. After creating the initial application, WillSub+ prompted the applicant to provide additional personal information (e.g., social security number, birthdate, phone number, mailing address, and physical address); the applicant executed

various clearance documents (e.g., background check forms, policies, and procedures) and provided information about education and past employment; and the applicant then certified the truth of all the information and submitted her application to Defendant ESS. *Id.* ¶¶ 11–13.

If Defendant ESS approved an application, the WillSub+ account would, upon login, provide additional documents to the applicant. *Id.* ¶ 13. Relevant here, WillSub+ required the applicant to digitally sign the following statement: "You agree that your electronic signature is the legal equivalent of your manual signature on this form and you consent to be bound by its terms." *Id.* WillSub+ then prompted the applicant to digitally sign additional acknowledgements regarding the Employee Manual and other employment terms and conditions, confirm personal information, and execute additional documents, including I-9 forms and health care notices. *Id.* ¶ 14. As part of these "pre-hire" forms, WillSub+ required the applicant to complete "Company Forms," including the "Benefits Enrollment (MEC Plan) Form," the "Paychex PEO Acknowledgement," the "WOTC Survey," and—at issue on the instant motion—the "Arbitration Agreement." *Id.* ¶ 15; *see* Ex. D, ECF No. 27-1, pp. 16–17.

For the Arbitration Agreement, the applicant must scroll through to the end of the eight-page document where the applicant must click "Sign Digitally" before the applicant can click the "Done" button. ECF No. 19-2, ¶¶ 18, 19; *see* ECF No. 19-1. After completing all required forms, the applicant certified the truth of all information in the forms, signed the verification digitally, and submitted the forms to Defendant ESS. ECF No. 19-2, ¶ 21. An applicant must submit a complete application and execute all forms before the applicant becomes an employee eligible to access substitute teaching openings posted on Frontline, one of Defendant ESS's online job board applications. *Id.* ¶ 22. Defendant ESS securely stores the data regarding each applicant's executed agreements. *Id.* ¶ 23.

A user need not complete all steps, or tasks within a single step, in a single session of WillSub+ as WillSub+ saves each completed step and completed individual tasks within steps, allowing a user to stop and resume later. ECF No. 27-1, ¶ 13. A user may not switch between the tasks of the application step and the tasks of the onboarding step. *Id.* ¶ 14. But within the onboarding step, a user may move between different tasks and generally complete them in any order. *Id.*

In her May 28, 2026 declaration submitted with the Motion to Compel, Rebecca Ribarro, Vice President of Systems for Defendant ESS, avers that the Plaintiff executed the Arbitration Agreement (ESS Arbitration Agreement) using her WillSub+ account email address and password on February 7, 2025. ECF No. 19-2, ¶¶ 24, 25 (citing ECF No. 19-2, Ex. A). Indeed, the Plaintiff's electronic signature on the ESS Arbitration Agreement is dated February 7, 2025. ECF No. 19-1; ECF No. 19-2, Ex. A.

In response, the Plaintiff provides a sworn declaration dated June 4, 2026, stating: "I did not execute the arbitration document that ESS Southeast LLC has produced in support of its Motion to Compel Arbitration. I did not sign, click to sign, or otherwise execute any arbitration document on February 7, 2025, or at any other time during my application, onboarding, or employment with ESS Southeast LLC." ECF No. 23, p. 32, ¶ 2. The declaration further states that "[a]t no point during the onboarding process did I receive, review, or execute a document that I understood to be an arbitration agreement waiving my right to a jury trial." *Id.* ¶ 4.

In response to the Plaintiff's affidavit, Ribarro states in a second declaration, dated July 1, 2026, submitted with the Defendants' reply in support of the Motion to Compel, that Ribarro further reviewed ESS's systems and records to clarify her earlier declaration. ECF No. 27-1, ¶¶ 3, 4. Ribarro provides true and accurate copies of the ESS change log, Ex. C, ECF No. 27-1,

p. 6, and audit log, Ex. D, ECF No. 27-1, p. 9, for the Plaintiff's WillSub+ account. ECF No. 27-1, ¶¶ 5, 6. The WillSub+ audit log shows that the Plaintiff "submitted" the ESS Arbitration Agreement on February 6, 2025, at 6:29 p.m. Central Standard Time (CST); *Id.* ¶ 8; Ex. D, ECF No. 27-1, p. 17.[2] A "submission" in WillSub+ refers to the end user completing a form or a task. ECF No. 27-1, ¶ 9. The Plaintiff's name—Matima Muhammad—is listed in the "changed by" column of the audit log for the Arbitration Agreement entry of "submitted." Ex. D, ECF No. 27-1, p. 17.

Ribarro avers that ESS's systems for WillSub+ time stamps executed documents using Coordinated Universal Time (UTC), resulting in the ESS Arbitration Agreement, which was submitted on February 6, 2025, at 6:29 p.m. CST, being recorded as executed on February 7, 2025, based on UTC time. ECF No. 27-1, ¶ 10.

Regarding the four required "Company Forms" listed above, the WillSub+ audit log shows that "Matima Muhammad" "submitted" the "Benefits Enrollment (MEC Plan) Form" at 6:26 p.m., the "Paychex PEO Acknowledgement" at 6:28 p.m., the "WOTC Survey" at 6:28 p.m., and the "Arbitration Agreement" at 6:29 p.m. *Id.* ¶ 17; *id.* Ex. D, ECF No. 27-1, p. 17. Ribarro has submitted a true and accurate copy of the Paychex PEO Acknowledgement the Plaintiff executed. ECF No. 27-1, ¶ 18; Ex. F, ECF No. 27-1, p. 29. The text box in the middle of the "Paychex PEO Acknowledgement" form titled "PLEASE CLICK HERE TO COMPLETE THE REQUIRED FORM" is an electronic link that transfers the user to Paychex's portal. ECF No. 27-1, ¶ 18. Based on the WillSub+ audit log, the Plaintiff completed the form by submitting

[2] Ribarro avers that, although the Plaintiff executed the documents in the Central Time zone, the time stamps in the audit log filed with the Court are shown in Eastern Time because the documents were printed from her computer browser that is set in the Eastern Time zone. ECF No. 27-1, ¶¶ 7, 8.

a validation code on February 6, 2025, at 6:28 p.m. CST. *Id.*; *id.* Ex. D. The timing of the submission is corroborated by Paychex's records.

Paychex is a licensed Professional Employer Organization (PEO) that provides clients with administrative services, including payroll processing and access to documents. ECF No. 27-3, ¶ 3. Defendant ESS is now and was in January through March 2025, a client of Paychex and is referred to in relevant Paychex documents as a "Worksite Employer." *Id.* ¶¶ 4, 8. Paychex maintains a highly secure online portal containing documents that newly hired employees of Worksite Employers are required to review, acknowledge, complete, and execute. *Id.* ¶ 5. Industry-standard security measures ensure that there can be no alteration of the documents maintained by Paychex, including the Paychex "Employee Acknowledgements" that contains the Paycheck Dispute Resolution Agreement at issue. *Id.* ¶ 9. When an ESS employee follows the electronic link to the Paychex secure site, the employee must first provide personal information, only after which the employee is permitted to proceed with reading, acknowledging, and signing the "Employee Acknowledgements," which acknowledges Defendant ESS's relationship with Paychex. *Id.* ¶¶ 10, 11.

The employee is asked on the Paychex site to agree to use an e-signature:

> By clicking the 'I Agree' button, you are signing this agreement electronically and agreeing to be bound by its terms and conditions. You acknowledge that this electronic signature carries the same legal authority and effect as a handwritten signature. Additionally, this electronic signature will be applied to all subsequent forms and documents requiring your signature. If you do not agree, do not click 'I Agree.'

*Id.* ¶ 12. After clicking "I Agree" to use an e-signature, the employee is presented with the "Employee Acknowledgements" document, which contains the Paychex Dispute Resolution Agreement. *Id.* ¶ 13. There is no time limit placed on the individual to review and accept this document. *Id.*

To agree and accept the terms of the "Employee Acknowledgements," the Plaintiff was required to click on a button marked "Electronically Sign and Continue." *Id.* ¶ 14. An individual cannot complete the process without clicking the "Electronically Sign and Continue" button after being presented with the "Employee Acknowledgements" document. *Id.* Following execution of the "Employee Acknowledgements," the individual receives a validation code. *Id.* ¶ 15. If an individual does not complete the "Employee Acknowledgements" document in Paychex's portal, the individual's information will not be posted to the Paychex payroll system and the individual will not be paid. *Id.* ¶ 16. Signed documents are converted to .pdfs, and neither Paychex nor the Worksite Employer can edit or overwrite the documents. *Id.* ¶ 17. When an individual signs a document such as the Employee Acknowledgements in Paychex's portal, the system automatically date-stamps the signed document. *Id.* ¶ 18. Paychex also maintains logs of data showing when the individual completed the form. *Id*. According to Paychex's records of the time and date stamps for the Plaintiff's completion of the relevant process, which includes her IP address, the Plaintiff completed and signed the "Paychex Employee Authorization and Acknowledgement HTML" at 18:27:16 CST on February 6, 2025. *Id.* ¶¶ 20–23; *id.* Ex. 2, ECF No. 27-3, p. 12.

After submitting the four "Company Forms" in WillSub+, including the ESS Arbitration Agreement, on February 6, 2025, at 6:29 p.m., the Plaintiff submitted a Payroll Profile Set Up Task acknowledgement at 6:29 p.m. CST. *Id.* ¶ 20; Ex. D, p. 17. Defendant ESS required the user to acknowledge that direct deposit through Paychex was mandatory and that her payroll profile must be set up through Paychex. ECF No. 27-1, ¶¶ 19, 20; Ex. G, ECF No. 27-1, p. 31.

The Plaintiff avers that on February 7, 2025, at 4:50 p.m., she was unable to access WillSub+ to complete the process, and she emailed ESS Account Manager Marisa Bustos at 4:53

p.m.: “The link I’ve been doing to get the pre employment paperwork done is no longer working. What are the next steps?” ECF No. 23, p. 32, ¶ 3; Pl. Ex. 1, ECF No. 23, p. 34. On February 7, 2025, the Plaintiff conducted Google searches regarding the WillSub+ system. Pl. Exs. 4, 4.1, ECF No. 23, pp. 45, 46.

On February 18, 2025, Bustos sent the Plaintiff an email informing her that she was selected for the Substitute Teacher position at Defendant CPCSC. Pl. Ex. 8, ECF No. 23, p. 52. The Plaintiff was invited to an orientation session on February 27, 2026. *Id.*

On February 19, 2025, the Plaintiff received an email from Paychex informing her she had “successfully completed the New Employee Onboarding process” and was eligible to register for the Paychex Oasis Employee Portal. Pl. Ex. 7, ECF No. 23, p. 50. On March 1, 2025, the Plaintiff emailed Bustos to follow up on information about Frontline, Pl. Ex. 5, ECF No. 23, p. 47, and on March 2, 2025, she received an invitation to access Frontline, Pl. Ex. 6, ECF No. 23, p. 48. The Plaintiff’s direct deposit in the Paychex Oasis Employee Portal was set up on March 5, 2025. Pl. Ex. 7.1, ECF No. 23, p. 51. The Plaintiff was paid a total of $4,633.26 during her employment. ECF No. 19-3, ¶ 11.

**D. The Arbitration Agreements**

*1. The ESS Arbitration Agreement*

The ESS Arbitration Agreement provides that Defendant ESS and the Plaintiff agree that “the parties’ claims will not be resolved by a court of law and the parties hereby waive their respective rights to a trial by jury”; “in consideration of the Employee’s continued employment with the Company, the Employee and Company agree that any claim or cause of action covered by this Agreement will be settled by arbitration”; “[t]he Employee and Company further agree that the option to arbitrate any dispute covered by this agreement is covered by the Federal

Arbitration Act (FAA) and is fully enforceable"; "[t]he Claims covered by this Agreement include, but are not limited to . . . claims for unlawful discrimination, including, but not limited to, unlawful discriminated based on race [and] retaliation . . . and all other claims or causes of action arising out of the employment relationship, not specifically excluded by the following paragraph, the written contract of employment, and post-employment disputes including claims for defamation." ECF No. 19-1, pp. 3, 4; ECF No. 19-2, Ex. A. An applicant or employee may opt out of the ESS Arbitration Agreement within 30 days of execution via email, mail, or hand delivery. ECF No. 19-1, p. 7. ESS has no record of the Plaintiff opting out. ECF No. 19-3, ¶¶ 8–10.

*2. The Paychex Dispute Resolution Agreement*

The Paychex Dispute Resolution Agreement provides that "[y]ou, Paychex, and the Worksite Employer agree" that the "Agreement governs legal disputes between you and . . . the business or organization you perform work for (your "Worksite Employer," which is an intended beneficiary of this Agreement) arising out of or in connection with . . . your employment, application for employment, or separation from employment for which you are, were, or would be paid through Paychex." ECF No. 27-3, p. 8. It further provides that, "[t]o the greatest extent allowed by law, except as otherwise provided below, any dispute between you and . . . your Worksite Employer will be resolved exclusively through binding arbitration." *Id.* The Agreement also covers "a legal dispute [that] involves . . . anyone alleged to be *joint employers* with . . . your Worksite Employer (. . . [with the joint employer an] intended [beneficiary] of this Agreement)." *Id.* p. 8 (emphasis added).

## STANDARD OF REVIEW

The Court's review of a Magistrate Judge's Report and Recommendation is governed by 28 U.S.C. § 636(b)(1)(C), which provides as follows:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."). Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (citations omitted). Judge Rodovich gave the parties notice that they had fourteen days to file objections to the Report and Recommendation. ECF No. 41.

## ANALYSIS

The Defendants move to compel arbitration of the Plaintiff's claims in this lawsuit. The Plaintiff opposes arbitration, contending that she did not execute an arbitration agreement. Magistrate Judge Rodovich recommends that the motion be granted, the Plaintiff's claims against both Defendants proceed to arbitration, and this lawsuit be stayed. The Court agrees.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." *Rose v. Mercedes-Benz USA, LLC*, 167 F.4th 975, 978 (7th Cir. 2026) (quoting *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (cleaned up)). Thus, a party seeking to compel arbitration must establish: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration

agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Id.* (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)). "Whether someone has agreed to arbitrate is a question for the court rather than the arbitrator . . . ." *Carter v. SP Plus Corp.*, 172 F.4th 970, 973 (7th Cir. 2026) (citing *AT&T Techs., Inc.*, 475 U.S. 643).

The Seventh Circuit Court of Appeals has analogized "the evidentiary standard a party seeking to avoid compelled arbitration must meet" to "that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure." *Rose*, 167 F.4th at 978 (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). Thus "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify *specific evidence* in the record demonstrating a material factual dispute for trial." *Id.* (quoting *Tinder*, 305 F.3d at 735).

As an initial matter, the Plaintiff did not object to Judge Rodovich's rulings on the second and third elements to compel arbitration. On the second element, the Plaintiff's employment discrimination claims are within the scope of the ESS Arbitration Agreement, covering "claims for unlawful discrimination, including . . . unlawful discrimination based on race" and "all other claims or causes of action arising out of the employment relationship." Her claims are also within the scope of the Paychex Dispute Resolution Agreement, covering "legal disputes" arising out of her employment that are brought against her "Worksite Employer" (Defendant ESS) and a "joint employer" (Defendant CPCSC). On the third element, the Plaintiff has refused to arbitrate by not responding to counsel's informal requests to arbitrate and through her opposition to the instant Motion to Compel Arbitration. There is no clear error in either ruling.

In addition, the Plaintiff did not object to Judge Rodovich's separate ruling granting Defendant CPCSC leave to join Defendant ESS's Motion to Compel Arbitration based on

CPCSC being a nonsignatory, third-party beneficiary to the Paychex Dispute Resolution Agreement. *See* ECF No. 27, 28, 30, 35, 37, 39, 40. "If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled." *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (analyzing 9 U.S.C. §§ 2, 3). Indiana law provides that when the signatories to an arbitration agreement expressly communicate a desire for a nonsignatory to be permitted to enforce the arbitration agreement, "the outside party is an intended third-party beneficiary because the agreement imposes an obligation on a contracting party in favor of the nonsignatory." *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 522 (Ind. 2021) (citation omitted). "[T]he contracting parties' intent must be clear." *Id.* (same).

Here, the Paychex Dispute Resolution Agreement requires that legal disputes between the Plaintiff and the "Worksite Employer"—Defendant ESS—be submitted to arbitration. And the agreement expressly covers "legal disputes" involving "joint employers" of Defendant ESS. The Plaintiff's legal claims in this lawsuit against Defendant CPCSC are based on her allegation that Defendants ESS and CPCSC are "joint employers." *See* Pl. Resp. 24, ECF No. 23. Thus, although Defendant CPCSC was not a signatory to the Paychex Dispute Resolution Agreement, Defendant CPCSC may enforce the Plaintiff's obligation to arbitrate "legal disputes" against it arising out of her employment because the Plaintiff and Paychex expressly communicated a desire for "joint employers" to be permitted to enforce the arbitration agreement.

The Plaintiff's sole opposition to arbitration is her contention that the Defendants have failed to establish the formation of an agreement to arbitrate. She contends that she did not execute the ESS Arbitration Agreement and that her execution of the Paychex Dispute Resolution Agreement did not evidence assent. "Whether an agreement to arbitrate has been

formed is governed by state-law principles of contract formation." *Rose*, 167 F.4th at 978 (quoting *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024)).

Under Indiana law, "[a]n arbitration agreement, as with a typical contract, requires 'offer, acceptance of the offer and consideration.'" *Tchrs. Credit Union v. Cripe*, 248 N.E.3d 1230, 1237 (Ind. Ct. App. 2024) (quoting *Land v. IU Credit Union*, 218 N.E.3d 1282, 1287 (Ind. 2023)), *transfer denied*, 257 N.E.3d 776 (Ind. 2025). And "[t]o bring a contract into existence, an offer must be extended and the offeree must accept it, the communication of acceptance being crucial. Thus, a meeting of the minds between the contracting parties is essential to the formation of a contract." *Id.* (quoting *Troutwine Ests. Dev. Co. v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 897 (Ind. Ct. App. 2006), *trans. denied* 869 N.E.2d 456 (Ind. 2007)). A mutual promise to arbitrate future disputes constitutes consideration. *See Jenks v. Workman*, No. IP99-1389-C-TG, 2000 WL 962821, at *5 (S.D. Ind. June 22, 2000).

And "[u]nder Indiana law, a person is presumed to understand the documents which [she] signs and cannot be released from the terms of a contract due to [her] failure to read it." *Earley v. Edward Jones & Co., L.P.*, 105 N.E.3d 1094, 1100 (Ind. Ct. App. 2018) (citation omitted). Online agreements are enforceable when a party clicking "accept" "had reasonable notice of and manifested assent to the agreement." *Jallali v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc.*, 908 N.E.2d 1168, 1173 (Ind. Ct. App. 2009) (citation omitted). The "inquiry does not focus on each party's subjective intent, but focuses on each party's outward manifestation of intent." *Ellison v. Town of Yorktown*, 47 N.E.3d 610, 619 (Ind. Ct. App. 2015) (citation omitted).

The question before the Court is whether the Plaintiff has raised a genuine dispute of material fact as to the formation of both the ESS Arbitration Agreement and the Paychex Dispute Resolution Agreement. The Court considers each in turn and finds that she has not.

**A. ESS Arbitration Agreement**

As to the ESS Arbitration Agreement, the Plaintiff argues that Defendant ESS has not shown the formation of an arbitration agreement. Defendant ESS offers the ESS Arbitration Agreement with the Plaintiff's signature dated February 7, 2025. Defendant ESS has also offered evidence through its WillSub+ audit logs on https://willsubplus.com that the ESS Arbitration Agreement was "submitted" by "Matima Muhammad" on February 6, 2025, at 6:29 p.m., explaining that the executed document has a UTC date stamp resulting in the February 7, 2025 date. The same WillSub+ audit log shows that shortly before submitting the ESS Arbitration Agreement at 6:29 p.m., the Plaintiff submitted the Paychex PEO Acknowledgement at 6:28 p.m., which is independently corroborated by Paychex's logs showing that the Plaintiff completed her registration in the Paychex system at 18:27:16 that day. In addition, the ESS Arbitration Agreement could not be "submitted" by an applicant without the applicant first scrolling to the end of the eight-page document where the applicant must click "Sign Digitally" before the applicant can click the "Done" button. The WillSub+ audit log shows that after submitting the ESS Arbitration Agreement, the Plaintiff moved to the Payroll Profile Setup and subsequent steps for onboarding, including access to Frontline, which was only accessible after being onboarded.

The "layout and language" of the electronic forms gave the Plaintiff "reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033–34 (7th Cir. 2016). In addition, the Plaintiff's email to Bustos at 4:53 p.m. on February 7, 2025, indicates that she had been successfully using the WillSub+ system for her pre-employment paperwork: "The link I've been doing to get the pre employment paperwork done is no longer working. What are the next steps?" The Plaintiff worked as a substitute teacher for

Defendant CPCSC from March 10, 2025, until her termination on May 29, 2025. It is undisputed that Defendant ESS required the Plaintiff to complete all steps in the onboarding process before becoming an employee, and it is undisputed that the Plaintiff became an employee and was paid.

Here, the Plaintiff offers her sworn declaration that she "did not execute" the ESS Arbitration Agreement, that she "did not sign, click to sign, or otherwise execute any arbitration document on February 7, 2025, or at any other time during my application, onboarding or employment with ESS Southeast LCC," and that "[a]t no point during the onboarding process did I receive, review, or execute a document *that I understood* to be an arbitration agreement waiving my right to a jury trial." She also offers evidence that at 4:50 p.m. on February 7, 2025, she was unable to access the WillSub+ platform and that she conducted Google searches regarding WillSub+.

But it is not enough for the Plaintiff to deny the facts on which the right to arbitration rests; the Plaintiff must identify "specific evidence" to show a dispute of material fact for trial. *See Rose*, 167 F.4th 979–80 (citing *Tinder*, 305 F.3d at 735). The Plaintiff's flat denial regarding her submission of the ESS Arbitration Agreement on February 6, 2025, at 6:29 p.m. is insufficient as it is contradicted by the record evidence set forth above. On summary judgment, which is the standard applied here, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Here, no reasonable jury could find, based on the Plaintiff's declaration, that the Plaintiff did not sign the ESS Arbitration Agreement.[3] The Plaintiff scrolled to the bottom of the

[3] The Court is not devaluing the Plaintiff's declaration as "self-serving." *Cf. Carter v. SP Plus Corp.*, 172 F.4th 970, 974 (7th Cir. 2026) (reversing where the district court "denigrate[d] [the plaintiff's] affidavit as 'self-serving'" and rejecting that as a basis for disregarding the affidavit (quoting *Hill v. Tangherlini*, 724

ESS Arbitration Agreement and clicked "Sign Digitally" and "Done" before moving to the next stages of onboarding. The Plaintiff had reasonable notice of and manifested assent to the agreement.

There is no genuine dispute of material fact regarding the formation of the ESS Arbitration Agreement between the Plaintiff and Defendant ESS. Accordingly, the Court grants the motion to compel arbitration of the Plaintiff's claims against Defendant ESS based on the ESS Arbitration Agreement.

**B. Paychex Dispute Resolution Agreement**

Here, the Plaintiff does not dispute that she electronically signed the Paychex Dispute Resolution Agreement. Rather, she argues that her electronic signature does not demonstrate mutual assent. As argued by the Defendants, there is no genuine dispute of material fact that the Plaintiff had reasonable notice of and manifested assent to the Paychex Dispute Resolution Agreement.

Paychex's e-signature agreement provides:

> By clicking the 'I Agree' button, you are signing this agreement electronically and agreeing to be bound by its terms and conditions. You acknowledge that this electronic signature carries the same legal authority and effect as a handwritten signature. Additionally, this electronic signature will be applied to all subsequent forms and documents requiring your signature. If you do not agree, do not click 'I Agree.'

After the Plaintiff agreed to use an e-signature, Paychex presented her with the "Employment Acknowledgements" document, which contains the Paychex Dispute Resolution Agreement. There was no time limit on the Plaintiff's review of the document. To execute the document, the Plaintiff clicked a button marked "Electronically Sign and Continue." Thus, the Plaintiff received

F.3d 965 (7th Cir. 2013) (overruling decisions that allowed judges to devalue self-serving affidavits made on personal knowledge))). Rather, the ruling is based on the contradictory evidence of record.

the "Employment Acknowledgements" after agreeing that "Electronically Sign and Continue" meant she was "agreeing to be bound by its terms and conditions" and that her electronic signature carried the same legal authority and effect as a handwritten signature. Practically, Paychex could not pay the Plaintiff until she completed these steps, and the Plaintiff was paid during her employment.

Thus, the undisputed evidence shows that Paychex presented the Plaintiff with the actual Paychex Dispute Resolution Agreement, which she signed. Under an objective test, these actions manifest assent, and the Court finds there is no dispute of material fact that there was an agreement to arbitrate. As forth above, Defendant CPCSC may enforce the arbitration agreement within the Paychex Dispute Resolution Agreement, which covers this lawsuit against the Plaintiff. Accordingly, the Court grants the motion to compel arbitration of the Plaintiff's claims in this lawsuit against Defendant CPCSC based on the Paychex Dispute Resolution Agreement.

Finally, although Judge Rodovich's recommendation did not address compelling arbitration of the Plaintiff's claims against Defendant ESS based on the Paychex Dispute Resolution Agreement, the Court finds that the Paychex Dispute Resolution Agreement is an independent basis for compelling arbitration of the Plaintiff's "legal disputes" arising out of her employment against Defendant ESS—the Plaintiff's "Worksite Employer" under the agreement. Defendant ESS asserted this basis for compelling arbitration in its reply brief. Accordingly, the Court also grants the motion to compel arbitration of the Plaintiff's claims in this lawsuit against Defendant ESS based on the Paychex Dispute Resolution Agreement.

**C. Stay of Litigation**

Last, the Motion to Compel seeks a stay of litigation pending the outcome of arbitration, and Judge Rodovich recommends a stay. The Plaintiff objects, arguing instead for dismissal. The

United States Supreme Court has held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Accordingly, a stay is appropriate in this instance.

**CONCLUSION**

Based on the foregoing, the Court GRANTS Defendant Crown Point Community School Corporation's Motion to Join Defendant ESS Southeast LLC's Response to Opposition to Report and Recommendation [ECF No. 46], DENIES as moot the Plaintiff's request for a hearing [ECF No. 23, p. 20], ACCEPTS the Report and Recommendation [ECF No. 41], GRANTS the Motion to Compel Arbitration [ECF No. 19], ORDERS that the Plaintiff's claims in this lawsuit against both Defendant ESS Southeast LLC and Defendant Crown Point Community School Corporation proceed to arbitration, and STAYS this federal litigation pending resolution of the arbitration.

SO ORDERED on November 2, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT